# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br> v. <br><br> STERLING INFOSYSTEMS, INC., <br><br> Defendant. | Case No.: 6:25-cv-00779 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against Sterling Infosystems, Inc. ("Defendant" or "Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check wherein Defendant published to Plaintiff's potential employer (at the time) an ***expunged*** criminal record that should not have been reported on the employment purposed consumer report.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from

its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant inaccurately reported to Plaintiff's employer an *expunged* criminal record that should not have been included in the employment purposed consumer report.

4. Specifically, on or about March 16, 2025, Defendant reported a criminal case that was *expunged* on or about August 23, 2022.

5. Plaintiff has no other criminal records to speak of.

6. Plaintiff's then prospective employer informed Plaintiff that Defendant published the *expunged* criminal record that should not have been reported.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Passaic County, New Jersey, prior to publishing Plaintiff's report to his prospective employer.

8. Had Defendant performed a cursory review of the public court records, it would have discovered that Plaintiff's criminal record had been expunged since August 23, 2022.

9. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report

being grossly improper, misleading, and inaccurate.

10. Specifically, Defendant does not employ reasonable procedures to prevent the inclusion of *expunged* criminal records in consumer reports.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, damage to his reputation; loss of sleep; loss of appetite, depression, and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

14. John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Orange County, Florida and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant Sterling Infosystems Inc. ("Defendant" or "Sterling") is a Delaware corporation doing business throughout the United States and in this District and has a principal place of business located at One Concourse Pkwy, NE,

Suite 200 Atlanta, GA 30328.

16. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The background check industry takes in revenues in excess of three billion dollars, annually.

33. Background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating background checks.

34. Background check companies, like Defendant, collect millions of criminal and civil records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36. Defendant places its business interests above the rights of consumers

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

*Doe v. Sterling Infosystems, Inc.*
Complaint

and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting an *expunged* criminal record.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Plaintiff Applies for Work with South University, Orlando Florida Campus ("SU")**

41. On or about March 1, 2025, Plaintiff applied for a job as a professor at

SU.

42. As part of the application process, SU required, and Plaintiff authorized a background check. Employment with SU was conditioned on Plaintiff passing a background check ("consumer report").

**Defendant Published an Inaccurate and Improper Background Check Report**

**SU**

43. SU contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44. On or about March 14, 2025, in accordance with its policy, SU ordered a criminal background check on Plaintiff from Defendant.

45. On or about March 18, 2025, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to SU.

46. Within that consumer report, Defendant published the extremely stigmatizing *expunged* criminal record that should have been excluded from the employment purposed consumer report, thus rendering the report inaccurate.

47. A cursory review of the widely available public court records confirms that the criminal record reported by Defendant was expunged and no longer available. In fact, the criminal record was expunged on or about August 23, 2022.

48. The sole reason the *expunged* criminal record was included in the

employment purposed consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

49. Had Defendant followed reasonable procedures, it would have discovered that the criminal record was *expunged* and should not have been reported.

50. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer an *expunged* criminal record that otherwise should not have been included, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### SU Informed Plaintiff that the Expunged Criminal Record was Reported by Defendant

51. Upon receipt of the consumer report from Defendant, SU notified Plaintiff that they were unable to approve his application due to the criminal record reported by Defendant.

52. Plaintiff was shocked because he knew that the only criminal record he had was expunged and should not have been reported.

53. Plaintiff contacted SU to explain that the record was *expunged* in August 2022 and should not have been included in the report in the first place.

54. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting both in relation to the positions with SU, but also the impact of the same on his future.

55. Thereafter, upon information and belief, SU disputed the inaccuracy with Defendant on behalf of Plaintiff.

56. On or about March 31, 2025, Defendant emailed Plaintiff and informed him that his employment purposed consumer report had been corrected, and the expunged criminal record had been removed.

57. Defendant's inaccurate reporting humiliated Plaintiff and Plaintiff fears that Defendant tarnished his professional reputation and discredited Plaintiff's professional qualifications.

58. While Plaintiff was ultimately hired for the position, he reasonably believes SU made the decision out of urgency, as the start of the academic term was only weeks away. Plaintiff further believes that Defendant's inaccurate and improper reporting led SU to form a negative perception of him. As a result, Plaintiff fears he will not be rehired for the upcoming term. Despite applying for multiple internal teaching positions for which he is well-qualified, none of the departments to which he applied have advanced his candidacy.

59. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

60. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, damage to his reputation; loss of sleep; loss of appetite, depression, and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

61. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

62. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

63. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

64. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

65. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information

it published within the same.

66. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, damage to his reputation; loss of sleep; loss of appetite, depression, and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

67. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this May 2, 2025

**CONSUMER ATTORNEYS, PLLC**

*/s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*John Doe*